ROBERT PERRET, JR., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5475–68. Filed February 1, 1971.

*M. M. Feinstein*, for the petitioner.
*M. A. Fein*, for the respondent.

ATKINS, *Judge:* The respondent determined deficiencies in income tax for the taxable years 1965 and 1966 in the respective amounts of $272.39 and $1,139.35. Due to concessions made by the petitioner, the only issue remaining for decision is whether legal fees and expenses incurred by the petitioner during the taxable years 1965 and 1966 in connection with the contest of his father's will are deductible as ordinary and necessary expenses under section 162 or section 212 of the Internal Revenue Code of 1954 or, if not, as capital losses under section 1211 of the Code.

### FINDINGS OF FACT

Some of the facts were stipulated and are incorporated herein by this reference.

The petitioner is an individual whose residence was in Brooklyn, New York, at the time the petition herein was filed. He and his wife, Joyce, filed joint Federal income tax returns for the taxable years 1965 and 1966 with the district director of internal revenue, Brooklyn, New York. Such returns were prepared and filed on the cash receipts and disbursements method of accounting.

Robert Perret, Sr., father of the petitioner, an attorney in sole practice, died on April 3, 1965, a resident of New York County, leaving surviving his wife, three sons, including the petitioner, and a daughter.

The will of Robert Perret, Sr., which was dated April 6, 1961, and codicils dated November 16, 1962, and May 8, 1963, were admitted to probate in June 1965. The decedent's estate, as reported in a sched-

ule filed in New York State proceedings, amounted to $194,348.89. The assets listed consisted of a house and grounds, valued at $45,000, securities valued at $40,238.08, cash in banks in the amount of $8,643.92, and miscellaneous property valued at $100,466.89. Included in the miscellaneous property were 10 items of outstanding fees and commissions in the amount of $31,814.83 owing to the decedent from clients in his law business and office furniture and furnishings valued at $1,902.06.

By his will the decedent left a house and grounds to his wife. Therein he directed that remainder of his estate be divided into two equal parts. He gave one of such equal parts to a trustee to hold and pay over the net income to his wife and directed that at her death the principal should be paid to such persons as she might direct or appoint in her will. He directed that the other equal part be distributed one-third to his son Pierre, one-third to his daughter Jacqueline, and one-third to his two grandchildren Denise and Michael Perret (children of his eldest son, the petitioner herein). He directed that the one-third to his grandchildren be held in trust for them by their mother until they reached the age of 26, the income to be accumulated during their minority or expended for their support, maintenance, or education, as the trustee might see fit. It was further provided that if both grandchildren should pass away, then the fund was to be paid to their mother outright.

The decedent's will completely disinherited the decedent's eldest son, the petitioner herein. Nor was petitioner therein named as executor or trustee.

The will contained the following provisions:

I desire that my clients be notified that I recommend the legal services of my friend and close associate, MILTON W. LEVY, who was not only acquainted with my practice but who also closely cooperated with me in many cases during the last twenty years. I particularly desire MILTON W. LEVY to take over the pending matters provided the clients agree. It is not my wish that my son ROBERT PERRET JR. take over my practice, or be concerned with the same.

\* \* \* \* \* \* \*

I have made no provision for my son ROBERT PERRET JR. because of the considerable amounts expended for his education in Europe and the financial assistance extended to him, as an adult, over the years, directly or indirectly, the total of which sums is at least the equivalent of the legacies to each of his younger siblings.

The petitioner engaged a firm of attorneys to challenge the April 6, 1961, will. Petitioner paid the law firm $1,375 in 1965 on account of legal services rendered in connection with the challenge of the will. In 1966 petitioner paid such law firm $5,707.14 for legal services and expenses in connection with the challenge of the will, and also in that

year paid other expenses totaling $245 in connection with such challenge.

Upon advice of counsel, sometime in 1967, petitioner's suit was discontinued and not litigated to a final conclusion. Petitioner received no assets as a result of the litigation.

The petitioner is an attorney who has been admitted to practice in the State of New York since 1957. He was associated with his father in the practice of law from April 1957 to September 1960. Their clients consisted principally of foreign individuals and corporations. The petitioner had separate business arrangements with some of the clients, principally with regard to tax, pension plan, and real estate problems, which his father did not handle. In September 1960, the petitioner went into practice for himself for a short term and then became an attorney for the Dime Savings Bank of Brooklyn, continuing to do some practice on the side. From September 1960 until April 3, 1965, when his father died, the petitioner tried to keep in touch with his father's clients. After the termination of his association with his father the petitioner did a small amount of specialized work for some of his father's clients for awhile, but such work "died out."

After his father's death the petitioner made attempts to obtain some of the decedent's clients as his own, but these efforts were unsuccessful. Most of such clients made arrangements elsewhere. After the will was admitted to probate the executor of the estate refused to permit petitioner access to the decedent's client files.

In his returns for the taxable years 1965 and 1966, the petitioner deducted the respective amounts of $1,375 and $6,140.54 as legal fees incurred in the contest of his father's will. Therein he stated his occupation as "lawyer" and "banker," respectively. In such returns the income reported consisted of salary, interest, dividends, and capital gains. No income was reported from the conduct of any business.

In the notice of deficiency, the respondent disallowed the above claimed deductions with the following statement:

It has not been established that deductions are allowable for legal expenses in the amounts of $1,375.00 and $6,140.54 as claimed on your 1965 and 1966 returns, or that those amounts are allowable as capital loss deductions on your 1965 and 1966 returns. Those amounts, if expended, are held to be non-deductible personal expenses.

### OPINION

The respondent's determination that the legal fees and related expenses incurred by petitioner in contesting his father's will are not deductible in computing petitioner's taxable income has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong. *Welch* v. *Helvering*, 290 U.S. 111.

The petitioner contends that the legal fees and related expenses are deductible as ordinary and necessary expenses under section 162(a) or section 212(2) of the Internal Revenue Code of 1954, or, alternatively, are deductible as capital losses under section 1211(b) of the Code.[1]

The petitioner contends that his father's will, in expressing a desire that petitioner should not take over the decedent's law practice and recommending that another attorney take over the pending legal matters, adversely affected his reputation as a lawyer and his professional relationship with his own clients and prospective clients from among his father's clientele; that his predicament was further aggravated because the attorney, executor of the decedent's will, made known these provisions of the will to the decedent's clientele in an attempt to secure for himself the decedent's accounts, and denied petitioner access to the decedent's client files; that his purpose in commencing the litigation was to have the will set aside and thus halt the attempts of the executor to secure the decedent's clients as his own and to halt "the character assassination and dissemination of half truths" which were affecting his professional standing and reputation; that any acquisition of assets of the estate would have been incidental; that the litigation was discontinued when the decedent's clients made other arrangements and it appeared futile to continue; and that hence the expenditures in question constitute deductible ordinary and necessary business expenses incurred in his practice of law.

On brief the petitioner attempts to support his position on the basis of numerous purported facts which are not substantiated by the rec-

---

[1] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

\* \* \* \* \* \* \*

(2) for the management, conservation, or maintenance of property held for the production of income * * *

SEC. 1211. LIMITATION ON CAPITAL LOSSES.

(b) OTHER TAXPAYERS.—In the case of a taxpayer other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges * * *

SEC. 1222. OTHER TERMS RELATING TO CAPITAL GAINS AND LOSSES.

For purposes of this subtitle—

\* \* \* \* \* \* \*

(2) SHORT-TERM CAPITAL LOSS.—The term "short-term capital loss" means loss from the sale or exchange of a capital asset held for not more than 6 months, if and to the extent that such loss is taken into account in computing taxable income.

\* \* \* \* \* \* \*

(4) LONG-TERM CAPITAL LOSS.—The term "long-term capital loss" means loss from the sale or exchange of a capital asset held for more than 6 months, if and to the extent that such loss is taken into account in computing taxable income.

ord. Indeed, the evidence adduced is meager and, in our opinion, falls far short of establishing that the expenses in question constitute ordinary and necessary business expenses within the meaning of the statute. The petitioner had become disassociated from his father's practice about 5 years before his father's death and was employed as an attorney for a bank. Apparently he continued in this capacity, at least through the years in question, inasmuch as in his 1966 return he described his occupation as "banker." He testified that he continued to do some practice on the side, but the extent and the nature of such practice is not shown. We note that petitioner's returns for the years in question do not include any income derived from any such practice. He further testified that during the period from September 1960 until the time of his father's death he attempted to keep in touch with his father's clients and that he did some, but not much, specialized work for them, but that this work "died out." Obviously it died out prior to the years in question. While he argues on brief that as a result of his father's will and the actions of the executor his reputation with his existing clients was injured, as indicated above, we are not advised as to what clients he may have had in the years in question. Furthermore, there is no testimony or other evidence as to any adverse effect upon any such clients.

Petitioner testified that he attempted to obtain some of his father's clients, consisting of European individuals and corporations, but that they were "leery" since they could not understand why his father had not set up a normal succession according to European custom, and that there had been "character assassination also." Even if the terms of the will had the claimed adverse effect, we fail to see how setting aside the will could mitigate any damage to the petitioner's professional standing and reputation. According to the petitioner's statement on brief he had initially signed a waiver and consent permitting the will to be probated, and that only due to subsequent events did he begin the litigation in order to protect and preserve his reputation and legal business. It seems apparent, therefore, that the fact of his failure to succeed to his father's law business was already known and setting aside the will could not change that fact. In this connection it should be pointed out that we have no evidence whatsoever as to the grounds upon which the petitioner sought to have the will set aside. The petitioner states on brief that the subsequent events to which he refers were the above-mentioned alleged actions of the executor and alleged character assassination and dissemination of half truths. There is no evidence as to the nature of any character assassination, by whom committed, or what effect it may have had upon petitioner's efforts to obtain his father's clients or upon his professional reputation. There is no evidence as to any activity of the executor, other

than his refusal to permit petitioner access to the client files. Even if setting aside the will would have resulted in petitioner's gaining access to the client files, we fail to see how this could, under the circumstances, have been of benefit to petitioner.

In view of the foregoing, we cannot accept the contention that the legal expenses are deductible under section 162(a) as ordinary and necessary expenses incurred by petitioner in his trade or business. We must conclude that the petitioner has failed to show that his purpose in contesting the will was other than the usual purpose of a disinherited heir, namely, to acquire by intestacy a share of decedent's assets.

Petitioner further contends that the expenses in question are deductible under section 212(2) of the Code as expenses incurred for the conservation and maintenance of property held for the production of income. This provision obviously contemplates property owned by the taxpayer. In this regard petitioner contends that under New York law, in the case of real property, title devolves immediately into the distributees and not the estate; that therefore he, as an intestate distributee of his father's estate, immediately obtained title to his intestate share of the real property upon his father's death subject to defeasance if his father's will was admitted to probate and recorded within the applicable statutory period; that the property though not income-producing property could have been converted into income-producing property; and that therefore the expenses incurred with respect to the will contest are deductible under section 212.

To support his contention that he received a defeasable title to his father's real estate, he cites, *inter alia*, N.Y. Deced. Est. Law, sec. 46 (McKinney 1949), which provides in part as follows:

The title of a purchaser in good faith and for a valuable consideration, from the heir of a person who died seized of real property, shall not be affected by a devise of the property made by the latter, unless within two years after the testator's death, the will devising the same is either admitted to probate and recorded as a will of real property in the office of the surrogate having jurisdiction, or established by the final judgment of a court of competent jurisdiction of the state, in an action brought for that purpose. * * *

It is clear that petitioner's position is not supported by New York law. Decedent Estate Law, section 46, merely seeks to protect the rights of a good-faith purchaser of real estate from the claims of a devisee by creating an effective 2-year statute of limitations for such claims, as pointed out in the Practice Commentary of the Commission on Estates prepared in connection with section 3–3.8 of the New York Estates, Powers and Trust Law which presently embodies section 46 of the Decedent Estate Law with no substantive changes. It does not deal with rights of a distributee under New York law. It appears to be

well settled by decisions of the courts of New York that the title to real property of a decedent vests in the devisee named in his will, that only if it is not legally devised does it vest in his distributees, and that title is derived from the will and not from its probate. See *Waxson Realty Corp.* v. *Rothschild*, 255 N.Y. 332, 174 N.E. 700; *Corley* v. *Mc-Elmeel*, 149 N.Y. 228, 43 N.E. 628; and *In re Fry's Estate*, 28 Misc. 2d 949, 218 N.Y.S. 2d 755. See also N.Y. Deced. Est. Law, sec. 83 (McKinney 1949).

In view of the foregoing, we conclude that the expenses were not incurred for the conservation or maintenance of property owned by petitioner, but rather to acquire an intestate share of property, and that petitioner is, therefore, not entitled to deduct the claimed expenses under section 212(2) of the Code.

Petitioner contends, in the alternative, that if the expenses incurred in the contest of decedent's will do not constitute ordinary and necessary expenses under section 162(a) or section 212(2), they are deductible as capital losses. In this respect, the petitioner contends that the litigation, if successful, would have resulted in the acquisition of capital assets; that in such event the legal expenses incurred would have been added to the basis of the assets acquired; that therefore such expenses were capital in nature; and that since they did not result in the acquisition of capital assets they must be considered as capital losses.

In *New Colonial Co.* v. *Helvering*, 292 U.S. 435, the Supreme Court stated in part:

Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.

\*  \*  \*  \*  \*  \*  \*

Obviously, therefore, a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms.

On brief the petitioner cites section 1211(b) of the Code in support of the claimed deduction. That section, however, allows a deduction only for losses sustained upon *the sale or exchange of capital assets*. Here, the expenses were not incident to any sale or exchange of capital assets. Nor is there any other provision of the Internal Revenue Code of 1954 which would allow the deduction of the expenditures in question as capital losses.

The petitioner relies upon *S. Cupples Scudder, Executor*, 22 B.T.A. 1294, for his contention that the expenses incurred gave rise to deductible capital losses, but that case does not support his view. There the taxpayer, the minority shareholder of a corporation, purchased stock

of the corporation from other minority shareholders in an attempt to gain control of the corporation. Subsequently, the trustees of the estate of the controlling shareholder brought suit against the taxpayer and his assignors, claiming therein that the assignors had broken their agreements giving the controlling shareholder an option to purchase such stock. The taxpayer's defense of the assignment was unsuccessful and the assigned stock was acquired by the trustees. The taxpayer subsequently obtained a portion of such stock pursuant to an option agreement between himself and the controlling shareholder. In that case we rejected both the contention of the taxpayer that the expenses incurred in the litigation were ordinary and necessary expenses incurred in his trade or business and the respondent's contention that the expenses constituted part of the cost of the stock ultimately acquired by the taxpayer. Rather, we concluded that the expenses related to the unsuccessful attempt to acquire stock which would have given him control of the corporation. We stated that the expenditure was capital in its nature, but we did not hold that it was deductible as a capital loss. Indeed such a holding would have been precluded by section 206(a)(2) of the Revenue Act of 1921, which specifically defined a capital loss as the "deductible loss resulting from the sale or exchange of capital assets." Rather, the effect of our holding was to allow the expenditure as a deduction under section 214(a)(5) of the Act as a loss incurred in a transaction entered into for profit.

Petitioner does not here contend that the expenses in question are deductible under section 165 of the Internal Revenue Code of 1954 (counterpart of section 214(a)(5) of the Revenue Act of 1921) as losses sustained in a transaction entered into for profit. In any event, it is well established that legal expenses incurred in the contest of a will are not deductible as losses under that section since the contest of a will does not constitute a "transaction entered into for profit" as that phrase is used in the section. *Merriman* v. *Commissioner*, (C.A. 1) 55 F.2d 879, affirming 21 B.T.A. 67.[2]

In view of the foregoing, the respondent's determination is approved.

*Decision will be entered for the respondent.*

---

[2] In that case the court stated :

"When the petitioner brought her suit to break her aunt's will, it was to establish her right to what she must have claimed honestly belonged to her. To hold otherwise would be to impute to her dishonest motives. If the litigation had proved successful, she would have received only such part of the testator's estate as justly belonged to her. That would not have been profit. The litigation was unsuccessful. Her anticipated share in the estate was denied her. It was not loss because she never possessed it. To hold that the expenses of litigation under the existing facts were a deductible loss because incurred in a transaction entered into for profit would be straining the meaning of 'profit' beyond any ordinary or usual meaning of the word and beyond the sense in which it was used by Congress."