**ROSENBLUTH TRADING, INC.,**
**Plaintiff-Appellant,**

**v.**

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 780, Docket 83–6269.**

United States Court of Appeals,
Second Circuit.

Submitted Feb. 23, 1984.

Decided June 1, 1984.

---

Leonard Rodney, Jeffrey L. Solomon, Rosenbluth Rosenbluth & Rodney, New York City, on brief, for plaintiff-appellant.

Rudolph W. Giuliani, U.S. Atty., Jordan Stanzler, Leona Sharpe, Asst. U.S. Attys., New York City, on brief, for defendant-appellee.

Before TIMBERS, NEWMAN and KEARSE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This is an action by an employer to recover employer and employee social security tax payments following a determination by the Social Security Administration (SSA) that the person on whose account the payments were made was not a bona fide employee entitled to retirement benefits. Plaintiff Rosenbluth Trading, Inc. appeals from the judgment of the District Court for the Southern District of New York (Lloyd F. MacMahon, Judge) granting summary judgment for the Government. The District Court held that it lacked subject matter jurisdiction over this tax refund claim because Rosenbluth Trading, Inc. had not filed a timely administrative refund claim as required by 26 U.S.C. §§ 6511(a) and 7422(a) (1982). We agree and affirm the judgment of the District Court.

### Facts

Kalman Rosenbluth was allegedly employed from March 1968 until June 1976 by Rosenbluth Trading, Inc. of Fort Lauderdale, Florida, a family textile import and export business. Kalman's brother, George, was the president of the firm. During that period, Rosenbluth Trading made employer and employee social security tax payments on behalf of Kalman.

On January 5, 1976, Kalman Rosenbluth filed an application for retirement insurance benefits under section 202(a) of the Social Security Act, 42 U.S.C. § 402(a) (Supp. V 1981). Based upon a record that included denials by persons Kalman alleged were his customers and conflicting statements in Kalman's own representations, the SSA ruled on May 4, 1977, that Kalman had not been a bona fide employee of Rosenbluth Trading for the period in question and consequently was not entitled to social security benefits. Kalman took an administrative appeal and was accorded a hearing before an Administrative Law Judge on April 7, 1978.

On August 31, 1978, the Administrative Law Judge affirmed the prior determination that Kalman had not been a bona fide employee. He also found that Kalman had not been without fault in receiving overpayment of retirement benefits before SSA's determination and ordered Kalman

to return such payments. *See* 42 U.S.C. § 404(b) (1976).

On May 24, 1978, during the pendency of the administrative appeal, the Internal Revenue Service sent a letter to Rosenbluth Trading advising it that any excess employee and employer social security tax payments would be returned if an enclosed Form 5071 were sent to the IRS. The IRS instructed the employer to return the form "as soon as possible." Rosenbluth Trading did not send the form to the IRS until February 1980, and on January 21, 1981, the application for a refund was denied on the ground that it was untimely.

On November 30, 1982, Rosenbluth Trading commenced this action to recover the social security tax payments. In its answer, the Government asserted the defense of lack of subject matter jurisdiction. The District Court dismissed the action on the ground that the claim was barred by 26 U.S.C. §§ 6511(a) and 7422(a) since Rosenbluth Trading did not file an administrative claim until February 1980, which, as the Court noted, was "over three years after the last return concerning [Kalman] was filed and the last tax payment on behalf of [Kalman] was made."

### Discussion

Section 7422(a) of the Internal Revenue Code, 26 U.S.C. § 7422(a) (1982), provides that no suit shall be maintained in any court for the recovery of "any internal revenue tax" alleged to have been wrongfully collected "until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard." Section 6511(a) of the Code, 26 U.S.C. § 6511(a) (1982), provides that a claim for refund of an overpayment "of any tax imposed by this title" for which a return is required shall be filed within three years from the time the return was filed or two years from the time the tax was paid, whichever is later.[1] If these provisions apply to social security tax payments in the circumstances of this case,

there is no doubt that the District Court could not entertain Rosenbluth Trading's refund suit. The last tax return was filed and the last tax payment was made in April 1976. The administrative refund claim was made in February 1980, after the time periods specified in section 6511(a). The applicability of these provisions to social security tax payments, however, merits at least brief consideration.

The express terms of the provisions include social security tax payments. These taxes are imposed by chapter 21 of the Code, the Federal Insurance Contributions Act (FICA), 26 U.S.C. §§ 3101–3126 (1982). Section 3101(a) of the Code, 26 U.S.C. § 3101(a), specifically labels a FICA payment a "tax," and FICA is included in the Internal Revenue Code, all of which is designated as the "Internal Revenue Title." 26 U.S.C. p. 23, preceding § 1 (1982). Thus, FICA payments are an "internal revenue tax" within the meaning of section 7422(a) and a "tax imposed by this title" within the meaning of section 6511(a).

The doubt as to whether these provisions, despite their literal coverage, were intended to apply to the circumstances of this case arises from the partial, but by no means complete, resemblance of social security to insurance. If a traditional contract of insurance were involved, there would normally be no doubt that a determination of ineligibility for insurance coverage would result in a refund of premiums. *See Bituminous Casualty Exchange v. Ford Elkhorn Coal Co.*, 243 Ky. 456, 48 S.W.2d 1057 (1932) (mistaken belief that certain employees covered by policy); 6 *Couch on Insurance* 2d, § 34:64, at 804 (Anderson ed. 1961) (same); *see also Interstate Life & Accident Co. v. Cook*, 19 Tenn.App. 290, 86 S.W.2d 887 (1935) (lack of insurable interest); 15 J. Appelman, *Insurance Law and Practice* § 8360 (1944) (same). Principles of unjust enrichment would apply, and the cause of action would normally accrue when ineligibility for in-

---

1. If a timely administrative claim is filed as required by section 6511(a), a refund suit pursuant to section 7422(a) must be filed within two years of the date of mailing of a notice of disallowance of the claim. I.R.C. § 6532(a), 26 U.S.C. § 6532(a) (1982).

surance coverage was determined, not when the premiums were paid. *See Supreme Council Catholic Knights of America v. Gambati*, 29 Tex.Civ.App. 80, 69 S.W. 114 (1902) (action for return of premiums accrues at time of wrongful expulsion from beneficial association); 15 J. Appleman, *Insurance Law and Practice, supra*, § 8362, at 183 (action accrues when insurer denies liability for lack of insurable interest); *see also Interstate Life & Accident Co. v. Cook, supra* (implicit). Though claims against the United States for return of unearned premiums on a Government insurance policy might encounter sovereign immunity defenses, depending on the terms of the relevant statute, at least one Court of Appeals has assumed that a Government agency would voluntarily return unearned premiums, even under circumstances not specifically covered by the policy. *United States v. Gianakouras*, 41 F.2d 521 (6th Cir.1930) (per curiam).

In this case, we are concerned with social security, a hybrid system with some features that resemble traditional insurance and others that resemble traditional taxation, yet a system that is not precisely like either traditional insurance or taxation. Like most tax systems, social security levies a prescribed rate of taxation upon a specified measure of economic value, in this case, wages. But unlike most taxes, those payable under social security are earmarked, through the device of a trust fund, 42 U.S.C. § 401 (1976), for payment of benefits to employee taxpayers and their dependents, *see United States v. Lee*, 455 U.S. 252, 260, 102 S.Ct. 1051, 1056, 71 L.Ed.2d 127 (1982), and the level of benefits is tailored to the precise amount of wages on which FICA taxes were paid, 42 U.S.C. § 415. This use of tax payments, at rates set on an actuarial basis in light of aggregate benefit levels, to "purchase" individually computed retirement benefits is the principal aspect of the social security system that resembles insurance. Of course, the system is unlike traditional insurance in major respects, notably, the lack of funded reserves and the consequent dependency on future tax collections; also dissimilar from most insurance programs is the compulsory nature of social security. Reflecting the neither-fish-nor-fowl aspect of social security, Congress preferred not to call the tax provisions the "Payroll Tax Act" and instead authorized them to be cited as the "Federal Insurance Contributions Act." 26 U.S.C. § 3126 (1982). The system is frequently referred to as "insurance," *e.g., United States v. Lee, supra*, 455 U.S. at 258, 102 S.Ct. at 1055, or as "social insurance," *e.g., Capitano v. Secretary of Health and Human Services*, 732 F.2d 1066, 1075–76 (2d Cir.1984).

Manifestly, social security is not traditional insurance, and consequently principles applicable to return of unearned insurance premiums need not be imported uncritically into lawsuits involving social security payments, whether styled "taxes" or "contributions." Our immediate concern, however, is solely with the accrual of a right to demand return of payments made on behalf of a person determined to be ineligible for coverage. On that issue, the relevant statutes, whose terms appear to cover all tax payments, specify that the time for seeking a refund begins with payment of the tax or filing of the tax return. The applicability of those statutes to most tax payments is unexceptional because a taxpayer normally has an incentive promptly to challenge tax payments he believes are not lawfully required. However, when the tax payments are made in the expectation of obtaining eligibility for substantial retirement benefits, the incentive for contesting the payment obligation is obviously not at its fullest until non-coverage has been determined.[2] This is especially so

---

2. By "non-coverage" we mean that the person on whose behalf FICA payments were made is not in covered employment during the period for which the payments were made and therefore cannot benefit in any way from such payments. We are not concerned with FICA payments made on behalf of a covered employee who ultimately does not receive retirement benefits for lack of a sufficient earnings record to achieve insured status, *see* 42 U.S.C. § 414(a). The FICA payments for that employee are not worthless; they fulfill a portion of the require-

when the employer is a family corporation and the alleged "employee" is a family member.

Despite the surface appeal of the taxpayer's argument, we are not persuaded to rule that the strict requirements for refund suits and refund claims should be held inapplicable to this case. Administrative machinery exists that appears adequate, at least in most cases, to spare the taxpayer from the prospect of paying social security taxes in the good-faith but mistaken belief that his employee (or the taxpayer himself) is covered by social security, only to learn years after the time for claiming tax refunds has expired that coverage does not exist. The IRS has formalized procedures for answering taxpayer inquiries concerning the applicability of tax obligations to specific facts as set forth by the taxpayer. *See* Rev.Proc. 84–1, 26 C.F.R. § 601.-201 (1983). Under these procedures, the IRS has regularly responded to taxpayer inquiries concerning obligation for FICA taxes with respect to an individual whose employee status was uncertain. *See, e.g.,* IRS Private Ruling 8416017 (Jan. 13, 1984), IRS Private Ruling 8413012 (Dec. 30, 1983), and IRS Private Ruling 8412025 (Dec. 16, 1983), all available on Lexis and Westlaw. The Government informs us that the SSA also furnishes similar advice, though apparently without the formalized procedures of the IRS. We need not consider in this case whether section 6511(a) applies in circumstances where FICA taxes were paid after IRS advice that a payment obligation existed, with a consequently justified expectation of social security coverage. Rosenbluth Trading makes no claim that it even sought, much less obtained, advice from the IRS or the SSA.[3] Its incorrect predic-

tion, assuming it was made in good faith, which is by no means clear, that Kalman would ultimately be determined to be an employee for social security purposes provides no basis for declining to apply the literal terms of section 6511(a) to this case.

Taxpayer's other points are wholly without merit. The Government did not waive its reliance on the requirements of sections 7422(a) and 6511(a) by not pleading the statute of limitations as an affirmative defense. The filing of a timely refund claim is a jurisdictional requirement, which cannot be waived, *Essex v. Vinal,* 499 F.2d 226, 231 (8th Cir.1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975); *Powell v. Kopman,* 511 F.Supp. 700, 702–03 (S.D.N.Y.1981), and the Government raised the defense of lack of subject matter jurisdiction in its answer. Nor is the Government estopped from asserting lack of a timely refund claim by the IRS letter of May 24, 1978, informing the taxpayer that a refund would be made if Form 5071 was promptly returned. As Judge MacMahon noted, to whatever extent the IRS committed itself to make a refund,[4] it conditioned its offer upon prompt return of Form 5071, and Rosenbluth Trading did not return that form until February 1980, an unwarranted delay of nearly two years. Moreover, there is substantial doubt whether the IRS letter could estop the Government from asserting noncompliance with statutory requirements. *See Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam).

The judgment of the District Court is affirmed.

ments for insured status and enable the employee to achieve insured status by working in covered employment for the requisite number of remaining quarters.

**3.** An administrative advisory ruling would have had no significance in this case because the SSA's denial of benefits for Kalman Rosenbluth did not involve a disputed application of a statutory standard to undisputed facts. On the contrary, benefits were denied because the SSA was

not persuaded of the truth of Kalman's factual assertions.

**4.** Since the letter indicated that, upon prompt return of Form 5071, all excess tax payments would be refunded, it appears that, at least as an administrative matter, the IRS was willing to return FICA taxes even though the statutory period in which an administrative claim for their refund is required by section 6511(a) had long since expired.