Joseph I. SWIETLIK, personal repre-
sentative of the estate of Helen V.
Safran, deceased, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 85–1887.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1985.

Decided Dec. 26, 1985.
Rehearing and Rehearing En Banc
Denied Jan. 23, 1986.

Joseph I. Swietlik, Swietlik & Petajan,
Milwaukee, Wis., for plaintiff-appellant.

Joan I. Oppenheimer, Asst. Atty. Gen.,
Tax Div., U.S. Dept. of Justice, Wash-
ington, D.C., for defendant-appellee.

Before CUDAHY and POSNER, Circuit
Judges, and GRANT, Senior District
Judge.[*]

POSNER, Circuit Judge.

Bernard Safran killed his mother, Helen
Safran, in 1977, and was allowed to plead
no contest to reckless homicide. A trust
company, First Wisconsin, was appointed
personal representative of the estate. Mrs.
Safran's will had left her considerable prop-
erty to Bernard. Relatives of Helen chal-
lenged the will on the ground that the
common law bars a murdering heir from

---

[*] Hon. Robert A. Grant, of the Northern District of Indiana, sitting by designation.

collecting his inheritance. See *Riggs v. Palmer*, 115 N.Y. 506, 22 N.E. 188 (1889). Litigation ensued in the state courts of Wisconsin in which the crucial issue (left unresolved by the criminal proceedings) was whether Bernard had killed his mother with sufficient deliberateness to be barred by the murdering-heir rule. In 1978, while the litigation was in progress, First Wisconsin filed a federal estate tax return and with it a check for the tax liability shown as due on the return—more than $400,000. In 1979 the Wisconsin trial court held that Bernard's guilty plea disqualified him from inheriting. On appeal, the Supreme Court of Wisconsin held that reckless homicide was not per se disqualifying; the question was whether Bernard had intentionally killed his mother, and to answer the question the case would have to be remanded to the trial court for a factual inquiry. *In re Estate of Safran*, 102 Wis.2d 79, 306 N.W.2d 27 (1981). The following year the litigation was settled by an agreement under which a small portion of the estate went to Bernard (how much, the record does not disclose) and the rest to the objecting relatives. First Wisconsin then resigned as personal representative and was replaced by Swietlik.

Under Wisconsin law the probate court can award reasonable attorney's fees out of the assets of an estate to the objecting party in a will contest—provided the objector wins. Wis.Stat. § 879.37. After the contest over Helen Safran's will was settled, the victorious objectors were awarded substantial fees, and in 1983 Swietlik on behalf of the estate filed a claim for refund of more than $100,000 in estate tax, on the ground that the fees were deductible expenses of the estate. The government refused to pay. It said the claim for refund was barred by 26 U.S.C. § 6511(a), which requires that such a claim be filed no later than three years after the estate tax return is filed or two years after the estate tax is paid, whichever is later, and by 26 U.S.C. § 6511(b)(1), which provides that no untimely claim shall be allowed; Swietlik's claim had been filed more than five years after the filing of the return and the pay-

ing of the tax. After the claim was rejected, Swietlik brought this suit for refund, which the district court dismissed because of the untimeliness of the claim. See 26 U.S.C. § 7422(a). Swietlik appeals.

■ When the deadline for seeking a refund expired in April 1981, no one could know whether or in what amount the estate would incur a deductible expense for the legal fees of the objectors in the will contest. But Swietlik does not argue that the then contingent nature of any claim for refund prevented the statute of limitations in section 6511(a) from running. If a claim for refund is contingent or uncertain in amount or, as here, both, the proper procedure is to file a conditional claim before the statute of limitations runs out; if you fail to do that the statute of limitations will bar the refund. See *O'Brien v. United States*, 766 F.2d 1038, 1041 n. 3 (7th Cir.1985) (disapproving a contrary intimation in *Chertkof v. United States*, 676 F.2d 984, 991 (4th Cir.1982)). See also *United States v. Wells Fargo Bank*, 393 F.2d 272 (9th Cir.1968), where the estate knew before the filing deadline passed that it would incur attorney's fees but didn't know how much they would be.

■ This much is common ground between Swietlik and the government. Where they part company is over the question whether even a conditional claim could have been filed before the will contest was settled in 1982. The government concedes that despite the flat and unqualified language of section 6511(a) and the tradition of strict construction of statutes of limitations in suits against the government (of which more later), a legal incapacity to file a claim—infancy, for example—would toll the statute of limitations. We have our doubts. The only cases we can find that involve a defense of legal incapacity to the statute of limitations in section 6511(a) involve "restricted" Indians; and though all hold that the statute of limitations is tolled by the Indians' legal incapacity to file a refund claim, see *Dodge v. United States*, 362 F.2d 810, 815 (Ct.Cl.1966) (per curiam);

*Nash v. Wiseman,* 227 F.Supp. 552, 556 (W.D.Okla.1963); *Daney v. United States,* 247 F.Supp. 533, 535 (D.Kan.1965), aff'd on other grounds, 370 F.2d 791 (10th Cir.1966); *Harrington v. United States,* 70–1 U.S. Tax Cases (CCH) ¶ 9215, at p. 82,860 (N.D. Okla.1970), they may (as *Dodge* suggests, see 362 F.2d at 815) rest on the special obligations of the United States toward Indians. The government's concession is appealing, though; for why would Congress, in giving a taxpayer two or three years to file a claim, at the same time erect an obstacle to suit impossible to overcome even by someone who exercises the very highest degree of diligence in prosecuting his claim and is prevented from meeting the statutory deadline only by legal incapacity to file it? On the other hand a long line of cases under the Federal Tort Claims Act holds that the statute of limitations in that Act is not tolled by infancy. See, e.g., *Robbins v. United States,* 624 F.2d 971, 972 (10th Cir.1980). But we shall not have to decide whether incapacity can ever toll the statute of limitations in section 6511(a); for we reject Swietlik's argument that his predecessor, First Wisconsin, was incapacitated from filing a conditional claim for refund during the will contest.

It is true that under Wisconsin law the personal representative of an estate which has been devised by will is deemed a fiduciary of the person(s) named in the will to take the estate, see, e.g., *Estate of Hoyt,* 22 Wis.2d 209, 125 N.W.2d 350 (1963); 1 MacDonald, Wisconsin Probate Law and Practice §§ 7:38–7:39 (8th ed., Berman & Hallinan eds., 1982), and until the will contest was resolved this was the unworthy Bernard. On this base Swietlik builds the following argument. Had First Wisconsin filed a conditional claim for refund of estate taxes in anticipation that the objectors might prevail in the contest and claim a reasonable attorney's fee from the estate, this could not have helped Bernard, and could have hurt him, and would therefore have been a breach of trust. Filing such a claim could not (Swietlik argues) have helped Bernard because if he won the will contest the objectors would not be entitled

to any award of attorney's fees from the assets of the estate, so there would be nothing to deduct. True, the estate could deduct on its estate tax return the fees it had expended in defending the will contest, and this would require the filing of a conditional claim. But an alternative would be to add back the amount of the fees to the income that the estate had distributed to Bernard as its beneficiary and let Bernard deduct the fees on his personal income tax return; and depending on the respective marginal tax brackets of the estate and Bernard, and on other factors, this could be, and apparently was, more advantageous to Bernard than deducting the fees on either the estate's income tax return or the estate tax return would have been. See 26 U.S.C. § 642(g); 3 Bittker, Federal Taxation of Income, Estates and Gifts ¶¶ 81.2.6–81.4.7 (1981); Metzer, *The Deduction of an Estate's Administration Expenses: Section 642(g) of the Internal Revenue Code and Its Impact,* 21 Tax L.Rev. 459, 464–87 (1966). All this is on the assumption that Bernard would win the will contest, which was at least a possibility when the time for filing a claim for refund ran out. If he lost, he would have no income from the estate from which to deduct an expense (attorney's fees) in collecting that income—but if he lost he wouldn't care a fig whether the estate got a tax refund.

If filing a claim for refund could not have helped Bernard, it could have hurt him, by extending the period within which the government could claim that more estate tax was due than indicated on the estate tax return. See 26 U.S.C. § 7422(e). Swietlik concludes that it would have been a breach of trust for his predecessor to have filed a claim for refund before the will contest was resolved, and that therefore the predecessor was as legally incapable of filing such a claim as a child would have been.

██ This we greatly doubt and on several grounds. Although First Wisconsin was obligated to defend Bernard in the will contest, it must have known from the first

(as there was never any doubt about who had killed Mrs. Safran) that there was a high probability that the contest would end adversely to Bernard, and must have known that Bernard's successors as beneficiaries of the estate would be entitled to a reasonable attorney's fee paid out of the assets of the estate and probably would want to deduct the fee from the estate tax. The objectors were unlikely to waive their statutory right to attorney's fees and deduct all of the legal expenses of the will contest on their income tax returns. It is not clear that they could have done so. They undoubtedly could not have done so until they won the will contest, because expenditures to acquire property in a will contest are not deductible if the property is never acquired. See, e.g., *Merriman v. Commissioner,* 55 F.2d 879 (1st Cir.1932); *Perret v. Commissioner,* 55 T.C. 712, 719 (1971). Even if the property is acquired, the expenditures on acquiring it may not be deductible immediately, but may have to be added to the basis of the property, and hence deducted only when and if any capital gains tax is owed because the property has been sold. Cf. *Estate of Leaf,* 23 T.C. Mem. (CCH) 1497, 1500 (1964). They could be deducted immediately only if the interest acquired in the estate could be described as an income interest, such as a life estate. See *Commissioner v. Field,* 42 F.2d 820, 822–23 (2d Cir.1930) (L. Hand, J.); *Tyler v. Commissioner,* 6 T.C. 135 (1946). Maybe some of the objectors acquired life estates—the record does not show—but some must have gotten a fee simple interest. Moreover, unless the objectors incurred legal expenses in nice proportion to their shares of the estate, the reasonable attorney's fee to which each was entitled might be different from the expense that each had incurred. An objector who had incurred heavy legal expenses to secure a modest share of the estate probably would not be satisfied with being able to deduct those expenses on his income tax return, but would want them reimbursed.

In any event, the filing of a conditional claim for refund would not commit the estate to follow through with an actual claim when and if the will contest ended favorably to the objectors. The estate could always have withdrawn the claim for refund. Filing a conditional claim could have hurt the objectors only by extending the government's time for seeking additional estate tax; and rare is the taxpayer who will renounce a valid claim for a substantial refund for fear that the government will find more tax owing if it can extend the limitations period.

So filing a conditional claim of refund would have benefited the objectors greatly, given their expectations of winning the will contest; and by the same token it would have hurt Bernard only a little in an expected-value sense, because he was so unlikely to end up owning the estate. Moreover, the appellant has nowhere indicated how large a tax break Bernard would have received from being able to deduct the estate's attorney's fees on his personal income tax return, if he had won the will contest, rather than on the estate tax return; maybe it would have been trivial. An additional and most important point is that, contrary to Swietlik's argument, filing a conditional claim might well have been in Bernard's interest. Swietlik's argument is built on the false premise that a will contest must end in complete victory for one side and complete defeat for the other. It may also be settled. It was settled here, and Bernard got a piece of the estate, although apparently a small one, in the settlement. His slice might have been larger if the pie had been larger; and the pie would have been more than $100,000 larger if First Wisconsin had filed a conditional claim. Its decision not to do so, far from having been compelled by its fiduciary obligations to Bernard, may have disserved Bernard's interests.

■ Even if we ignore the value of such a claim to Bernard if the contest was settled, it is plain that from the standpoint of maximizing the expected value of the estate, rather than the expectation of Bernard alone, First Wisconsin would have been prudent to file the claim for refund. Since the personal representative's primary

duty is to the beneficiary named in the will, First Wisconsin could not have made its goal that of maximizing the expected value of the estate regardless of the identity of the beneficiaries; but it does not follow that it had to ignore the potential beneficiaries completely, as it did.

Although we can find no cases, either from Wisconsin or elsewhere, that are on point, we doubt that Wisconsin's law of trusts is so wooden that First Wisconsin would have been acting in breach of trust if, in an effort to balance the objectors' interests against Bernard's (even while weighting Bernard's interests much more heavily), it had filed a conditional claim for refund, given the substantial likelihood, clearly apparent in 1981 when the deadline for such a filing loomed, that Bernard would lose the contest. (The deadline passed while the appeal was pending in the Supreme Court of Wisconsin, the trial court having held that Bernard was disqualified from inheriting the estate.) Wisconsin does after all impose on the personal representative a (limited) fiduciary duty toward creditors as well as toward named beneficiaries. See, e.g., *In re Estate of Lecic*, 104 Wis.2d 592, 606, 312 N.W.2d 773, 779–80 (1981). It does this in recognition that most testators want their lawful debts paid, and perhaps also that some older people might find it hard to buy goods on credit if their estates weren't liable for their debts. It would be only a short step to hold that where the named beneficiary may have murdered the testator, the latter would if he could be consulted want the personal representative to make some provision for successive beneficiaries and not just let the estate be eaten away by avoidable taxes.

Other states that, like Wisconsin, impose on estate fiduciaries the duty to defend a will contest nevertheless qualify it "in those instances in which the executor knows of reasonable grounds to believe that the will may be invalid" (which certainly describes this case); they do so because the executor (and likewise we should think a personal representative) is "a fiduciary to persons having an interest in the estate."

*In re Estate of Garbalinski*, 120 Ill.App.3d 767, 772, 76 Ill.Dec. 411, 415, 458 N.E.2d 1065, 1069 (1983). The courts of Wisconsin have never expressed themselves on this matter but we would be surprised if when they do so they reject such commonsense notions. Even if the fiduciary duty to potential beneficiaries is distinctly secondary, surely the executor is not required to squander the estate's assets in defending a will contest if the will is quite likely, despite his best efforts, to be set aside. Many cases (though again none from Wisconsin) so hold. See, e.g., *Estate of Petro*, 177 Cal.App.2d 705, 708, 2 Cal.Rptr. 512, 514–15 (Dist.Ct.App.1960); *In re Estate of Minsky*, 59 Ill.App.3d 974, 979, 17 Ill.Dec. 501, 505, 376 N.E.2d 647, 651 (1978); *In re Estate of James*, 10 Ill.App.2d 232, 242–43, 134 N.E.2d 638, 643 (1956). Once it was reasonably apparent that Bernard would not be allowed to get the estate there was no reason to throw away a tax advantage to the estate merely because it probably would not advantage Bernard.

This was not, we emphasize, the run of the mill will contest where heirs who have been cut out of the testator's will claim undue influence or incapacity; such claims usually fail. This was the less common (though surprisingly common) case where the named beneficiary criminally kills the testator, the only issue being whether he did so intentionally. Granted, First Wisconsin could not just have thrown Bernard to the dogs before the contest was settled; "murdering heir" cases bristle with complexity, see, e.g., McGovern, *Homicide and Succession to Property*, 68 Mich.L.Rev. 65 (1969), and the objectors might have lost. But with the handwriting on the wall fairly distinct, First Wisconsin would not have been acting imprudently if it had filed the claim for refund notwithstanding Bernard's preference for deducting attorney's fees on his personal income tax return.

But if our hunch about Wisconsin's law of trusts is wrong—if that law is as rigid and myopic as Swietlik contends—still we do not think that this can carry the day for him. If Wisconsin wants to make the ad-

ministrators of its estates fiduciaries just of the named beneficiaries, with absolutely no duty to others who may have a better claim to the estate than the named beneficiary—to others who in this case had a presumptively superior claim in light of the acknowledged fact that Bernard had criminally killed the testator—that is its business, but we do not think it can obtain an estate-tax advantage for its citizens. If Swietlik is right (as we doubt), Wisconsin cares more about loyalty to the named beneficiary than about conserving the assets of the estate—so much so perhaps that there is no way that anyone but that beneficiary can benefit from deducting attorney's fees incurred in a will contest from the taxable assets of the estate unless the beneficiary requests the estate to deduct them and later loses the will contest; for the statute of limitations will then have been tolled even though the fees actually deducted are those of the objectors rather than those incurred on behalf of the beneficiary. If Wisconsin allows personal representatives to file refund claims on behalf of potential beneficiaries it will get the full advantage of the federal statute of limitations, but it cannot make the Internal Revenue Service dance to its peculiar tune.

If this seems a harsh result, still it is very much in keeping with tradition in the interpretation of statutes of limitations in suits against the federal government, both generally, see, e.g., *Soriano v. United States*, 352 U.S. 270, 275–76, 77 S.Ct. 269, 273–74, 1 L.Ed.2d 306 (1957), and with specific reference to 26 U.S.C. § 6511(a). The statute of limitations in that section is jurisdictional, meaning that the government does not forfeit reliance on it by failing to plead it, as it would with an ordinary affirmative defense. *Ancel v. United States*, 398 F.2d 456, 458 (7th Cir.1968); *Rosenbluth Trading Co. v. United States*, 736 F.2d 43, 47 (2d Cir.1984). The grounds for tolling statutes of limitations are more limited in suits against the government than in ordinary private litigation. See, e.g., *Kreiger v. United States*, 539 F.2d 317, 321 (3d Cir.1976) (per curiam). War, for example, does not toll such statutes, *Soriano v.*

*United States, supra,* 352 U.S. at 276, 77 S.Ct. at 273, and neither does insanity, *Williams v. United States*, 228 F.2d 129, 132 (4th Cir.1955); *Stepka v. United States*, 196 F.Supp. 184 (E.D.N.Y.1961). Granted, these cases differ only in degree from the case of legal incapacity, which the government concedes (perhaps improvidently) tolls the statute of limitations. But that is after all a case of genuine impossibility; war and insanity, or as here a possible conflict of interest, merely make it more difficult to file a timely claim, and that is not good enough. If the line seems artificial—if the principles that delimit it seem merely the archaic remnants of the much criticized doctrine of sovereign immunity—nevertheless it is too well established for us to shift it in Swietlik's favor.

The cases we have cited place in perspective Swietlik's claim to be the victim of unfair treatment. At worst, strictly enforcing the statute of limitations on claims for refund forces the personal representative in First Wisconsin's position to make a difficult choice. The resulting "unfairness" if it can be called that is no greater than in any other case where the statute of limitations works the forfeiture of a valid claim against the government through no fault of the claimant.

But in fact First Wisconsin's dilemma was much less acute than Swietlik argues even if, as we doubt, it was in serious danger of being deemed a disloyal fiduciary if it filed a claim for refund before the will contest ended. Back in 1981, when the statute of limitations was running out, First Wisconsin could have asked the probate court for instructions on whether to file a conditional claim. Wis.Stat. § 879.69. It could not have been accused of a breach of fiduciary obligations to Bernard merely because it asked for instructions. We imagine that if it had done so it would have been told to go ahead and file the claim, and thus would have been shielded from any potential liability to Bernard in the extremely unlikely event that he both won the will contest *and* later had to pay additional estate tax by virtue of the longer

period that the government would have had (if a claim of refund had been filed) to poke over the estate's tax return, looking for additional tax liability. (Each event was unlikely; and the product of two unlikely events is far more unlikely. If the probabilities of two independent events, A and B, are each 10 percent, the probability that both A and B will occur is only 1 percent.) Maybe we are wrong in our prediction of what the probate court would have told Swietlik; but we are sure that a taxpayer who does not take elementary steps to protect himself from the statute of limitations, which here would have required only that the personal representative have inquired from the probate court whether it could file a claim for refund without being guilty of a breach of trust, has no equity in asking that the statute of limitations be tolled, even if, as we doubt, tolling would ever be possible in the circumstances disclosed by this case. Cf. *Kellogg-Citizens Nat'l Bank v. United States*, 330 F.2d 635, 638 (Ct.Cl. 1964). This point distinguishes *Walkden v. United States*, 58–2 U.S. Tax Cases (CCH) ¶ 11,802 (N.D.Ohio 1957), aff'd without discussion of point, 255 F.2d 681 (6th Cir.1958) (per curiam), and we therefore need not decide whether that decision survives *United States v. Zacks*, 375 U.S. 59, 84 S.Ct. 178, 11 L.Ed.2d 128 (1963).

AFFIRMED.

CUDAHY, Circuit Judge, dissenting.

Focusing on the end result of this will contest—the objectors won and the named beneficiary received but a small settlement—the majority concludes that the estate's trustee should have filed a conditional claim tolling the statute of limitations. But only judges seem to be blessed with perfect hindsight and today's ruling places trustees in a dilemma.

A trustee has a fiduciary duty to the named beneficiary in a will. While some states may have modified this general rule,

there is no evidence that Wisconsin has. *See Estate of Hoyt*, 22 Wis.2d 209, 214, 125 N.W.2d 350, 353 (1963) ("[T]he executor is under no obligation to defend the estate distribution scheme. His role as trustee for the beneficiaries and creditors requires him to defend their interests against claims made by persons outside the class reached by his position of trust.") The named beneficiary in Helen Safran's will was indisputably Bernard. When the will contest began, First Wisconsin was legally obligated to act in Bernard's best interests.

The majority suggests that a fiduciary may risk disadvantaging the named beneficiary when there is a "high probability" that that beneficiary will be supplanted. But a trustee that acts on a "high probability" acts at his peril. If he is wrong and the named beneficiary survives as such, the trustee may well face a suit for breaching his fiduciary duty.[1]

Indeed, in this case it is by no means clear that the probabilities were high that Bernard would lose. Bernard was not found guilty of murder and thus the murdering heir rule did not clearly apply. The Wisconsin Supreme Court ruled that the murdering heir rule would not apply to reckless homicide unless there was additional evidence showing intent to kill. The objectors must have been somewhat uncertain about their ultimate chances of winning in court because they agreed Bernard should receive a share of the estate in settlement.

I agree that filing a conditional claim would have benefited the objectors. But at the time when it could have filed a conditional claim, First Wisconsin could not have assumed that aiding those who would strip Bernard of his inheritance would have benefited Bernard. If a conditional claim would not have helped Bernard, First Wisconsin would have breached its fiduciary obligation even if it would have hurt Ber-

---

1. Before this decision, a trustee's obligations were simple and clear. Now, a trustee is forced to guess to whom he is obligated. If he acts in the contestants' interest and the named beneficiary wins, the named beneficiary can sue.

And, if the will contestants are owed some duty on the theory that there is a high probability they will win, they can sue if the trustee maintains undivided fidelity to the named beneficiary.

nard only "a little." But a conditional claim was likely to hurt Bernard more than "a little" since it gave the IRS additional time to pore over the estate searching for vulnerabilities.

To the extent the estate could not have prevented the loss of the objectors' deduction, the majority concludes, there is a defect in Wisconsin law for which the objectors will have to suffer. The majority sees protection of tax revenue as paramount. But, as the majority concedes, cases like this are at least rare as the murder of mothers and cumulatively pose a negligible threat to the national fisc. The majority's result harshly penalizes the objectors although they are totally without fault and allows the government to pocket a $100,000 windfall. I therefore respectfully dissent.