**UNITED STATES of America,
Appellant,**

v.

**Joseph DANEY and Bertha Daney,
Appellees.**

**No. 8687.**

United States Court of Appeals
Tenth Circuit.

Dec. 27, 1966.

**792**

Jack S. Levin, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Meyer Rothwacks, Melva M. Graney, and Thomas L. Stapleton, Attorneys, Department of Justice, on the brief), for appellant.

John Claro and Bert Barefoot, Jr., of Barefoot, Moler, Bohanon & Barth, Oklahoma City, Okl., for appellees.

Before PICKETT and HILL, Circuit Judges, and CHILSON, District Judge.

HILL, Circuit Judge.

Appellees, in the court below, sued to recover $18,114.89 as a refund of income tax they alleged the government had illegally and erroneously collected from them. The District Court gave judgment to appellees and the government takes this appeal.

Up to and including the year 1958, Joseph Daney [1] was a non-competent, restricted full-blood Choctaw Indian. In 1903 he had been allotted 120 acres of land in the Choctaw and Chickasaw Nations Indian Territory. In 1929, this land was designated by him and the United States Department of the Interior as tax exempt in accordance with and subject to the terms of the Act of May 10, 1928, Ch. 517, 45 Stat. 495. The Act of January 27, 1933, Ch. 23, 47 Stat. 777, extended the tax exemption to other Indian funds and securities but provided expressly that oil and gas produced from

---

1. Bertha Daney, wife of Joseph Daney, is a party to the lawsuit only because the Daneys filed a joint return for the calendar year 1958.

the land was subject to State and Federal taxes as provided by Section 3 of the Act of May 10, 1928. Section 3 of the Act of May 10, 1928,[2] in pertinent part provides: "* * * all minerals, including oil and gas, produced on or after April 26, 1931, from restricted allotted lands [which includes the 120 acres with which we are here concerned] of members of the Five Civilized Tribes in Oklahoma * * * shall be subject to all State and Federal taxes of every kind and character the same as those produced from lands owned by other citizens of the State of Oklahoma; and the Secretary of the Interior is hereby authorized and directed to cause to be paid, from the individual Indian funds held under his supervision and control and belonging to the Indian owners of the lands, the tax or taxes so assessed against the royalty interest of the respective Indian owners in such oil, gas, and other mineral production."

In 1958 Daney received $61,333.20 from an oil company as a lease bonus upon the execution by him of an oil and gas lease upon his allotted land. On his federal income tax return for 1958 appellee listed the amount of the bonus so received less 27½ percent depletion allowance and expenses, plus $150 received in 1958 as a delay rental under the lease, or $44,472.57 as "advance royalty" and "rental" income. Thereafter, appellee filed a claim for refund in the amount of $18,114.57, the full amount of the taxes which had been paid on the lease bonus income and the delay rental. This claim was disallowed. Daney brought suit for the refund and was given judgment for "the principal amount of $18,114.89, plus interest, wrongly assessed and collected for the calendar year 1958." This appeal is limited to the question of the income taxability of the lease bonus.

A threshold issue we have to decide is whether or not Daney's land enjoyed any tax exempt status during the taxable

year 1958. The government's contention is that it did not. We cannot agree.

The Act of May 10, 1928, provided that the tax exemptions on land should not extend beyond the period of restrictions which were to end on April 26, 1956, under the terms of the Act. The Act of August 4, 1947, Ch. 458, 61 Stat. 731, § 6(b) provided that:

"All tax exempt lands owned by an Indian of the Five Civilized Tribes on the date of this Act shall continue to be tax-exempt in the hands of such Indian *during the restricted period* * * *." (Emphasis ours.)

The Act of August 11, 1955, Ch. 786, 69 Stat. 666, extended the period of restrictions on appellee's land by providing as follows:

"* * * the period of restrictions * * * which period was extended to April 26, 1956, by the Act of May 10, 1928 (45 Stat. 495), is hereby extended for the lives of the Indians who own such lands subject to such restrictions on the date of this Act."

Section 4 of the 1955 Act specifically provided that, subject to exceptions not here pertinent, "nothing in this Act shall be construed to repeal or to limit the application of the Act of August 4, 1947 * * *." By this clause, the tax exemption allowed under the Act of 1947, i. e., "during the restricted period", is made applicable to the period of restrictions extended for the period of Daney's life by the Act of 1955. Thus we conclude that the lands with which we are here concerned were tax exempt during the taxable year 1958.

As this court has said, a lease bonus such as that received by Daney is not the restricted land itself, but a tax on such a bonus is in substance a tax on the land. Bagby v. United States, 10 Cir., 60 F.2d 80; Pitman v. Commissioner of Internal Revenue, 10 Cir., 64 F.2d 740, 743; Squire v. Capoeman,

---

2. Section 3 of the Act of May 10, 1928, was amended by the Act of February 14, 1931, Ch. 179, 46 Stat. 1108, and by the

Act of March 12, 1936, Ch. 138, 49 Stat. 1160, but the language we are dealing with was not changed.

351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883. Because in the taxable year 1958 the land was tax exempt, the bonus was also tax exempt unless Congress intended by the Act of May 10, 1928, set out above, to subject it to income tax. The government's position is that the cash bonus paid to the appellee for his execution of the oil and gas lease is an advance royalty and is to be treated like other royalties and, in accordance with the statute, subjected to income tax, with a 27½ percent allowance for depletion. In urging this position, the government says that it "is firmly established in the federal tax law that a cash bonus paid to a lessor in connection with the execution of an oil and gas lease is considered an advance royalty" and that "for federal tax purposes * * * a bonus has always been considered as production income, i. e., income derived by the lessor in contemplation of production." The cases relied upon by the government do treat a lease bonus as an advance royalty and, hence, ordinary income. However, those cases have all addressed themselves to issues entirely different than that with which we are faced.[3]

None of those cases help us to construe section three of the Act of May 10, 1928, to determine if, by that statute, Congress intended to change the previously tax-exempt status of lease bonuses. During oral argument leave was granted to appellee to file an addendum setting forth excerpts of the legislative history of the Act of May 10, 1928. That history reveals that the main purpose of section three was to enable the State of Oklahoma to collect a gross production tax on the oil and gas produced on restricted Indian allotments. Prior to the enactment of section three of the statute, Oklahoma could not tax the income derived from mineral leases upon restricted Indian lands because the Supreme Court had held that the lessees, the mineral producers, were acting as instrumentalities of the United States Government and, therefore, the income they derived by virtue of their leases upon the restricted lands could not be taxed.[4] Section three was included with-

3. Those cases and the pertinent issues involved in them are:

Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277 (Involved the question of to whom income from an oil and gas lease is taxable.); Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324 (Should lease assignee-taxpayer's gross income include moneys paid to assignors by purchasers of oil?); Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (Could taxpayer take 27½ percent depletion allowance from income derived from oil property?); Murphy Oil Company v. Burnet, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318 (Involved the question of the correct calculation for deduction of depletion where Court found a lease bonus previously received was a return of capital.); Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199 and Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325 (Is a lease bonus to be treated as capital gain or ordinary income?); United States v. White, 10 Cir., 311 F.2d 399 (Did the transfer of mineral interests amount to a sale and thus require payment therefor to be treated as capital gain?); Sunray Oil Co. v. Commissioner of Internal Revenue, 10 Cir., 147 F.2d 962. (Could lessee deduct from his gross income for a taxable year that portion of lease bonuses allocable to that year?).

The only case cited by the government which involved special Indian legislation is Work v. United States ex rel. Mosier, 261 U.S. 352, 43 S.Ct. 389, 67 L.Ed. 693. In that case, the Supreme Court was concerned with the proper distribution of Osage tribal income under a 1906 statute; and it was according to the terms of that distribution statute the Court was compelled to say (358, 43 S.Ct. 391):

"What was intended to be distributed to the members of the tribe was the income from the mineral deposits in their lands, and the bonus was part of that. Doubtless Congress had in mind regular annual or quarterly equal payments when it used the word 'royalties,' and did not anticipate such large down payments. But in the unexpected event, we must decide under what head the bonus is to be treated, whether as capital or income, and it seems clear to us that, in view of the entire statute, it is more aptly described by the latter term."

4. See Gillespie v. State of Oklahoma, 257 U.S. 501, 42 S.Ct. 171, 66 L.Ed. 338

in the Act to enable the collection by Oklahoma of a gross production tax upon the minerals produced from the Indian lands. That is why the Act refers to "minerals * * * *produced*" and "royalty interest * * * in such oil, and gas and other mineral *production*." (Emphasis supplied.)

 The government makes much of the fact that, under the Act, an Indian's "minerals, including oil and gas, produced" shall be taxed "the same as those produced from lands owned by other citizens of the State of Oklahoma * * *." In view of this language, says the government, the lease bonus must be taxable income since: "The ordinary citizen pays income taxes at ordinary rates on a lease bonus because such bonus has been held under long standing Supreme Court decisions to be in the nature of an advance royalty payment to the lessor." [5] This misses the mark. We are not dealing with an ordinary citizen. We are dealing with a non-competent, restricted Choctaw Indian who, in 1958, was living on his allotted, restricted land. This Indian's lease bonus is taxable if and only if the Act of 1928 says it is. It is true that section three did and does subject to all State and Federal taxes any true production royalty which an Indian received from production on his restricted land. But it goes no further than that. It does not say that, under the "ordinary" rules of taxation, a lease bonus is to be treated as an advance royalty. The clear language and the history of the statute limit its application to royalties received on production. The government also says that: "Having made the initial decision to tax all minerals including oil and gas on the allotted lands, it is not fairly to be assumed that Congress thereafter intended one set of tax rules for the Indians and another, at variance with the latter, for ordinary citizens." We do not agree. Congress did accord to the Indians a different set of rules of taxation. The language of the statute purports to put Indians and other citizens of Oklahoma on equal footing only as regards minerals *produced*. The Indians still enjoy the special tax advantage as to other income from the allotted, restricted lands. That advantage must be preserved to carry out the Congressional purpose behind the allotment system which "was to protect the Indians' interest and 'to prepare the Indians to take their place as independent, qualified members of the modern body politic.'" [6] It may be said that there no longer exists any need to give the restricted Indian a tax advantage, that he has become an independent, qualified member of the modern body politic, and, indeed, that all the "ordinary" tax principles should be applicable to him. It is for Congress to make that determination and change the Act of May 10, 1928. This court cannot.

Affirmed.

(1922). Gillespie was subsequently overruled by Helvering v. Mountain Producers Corp., 303 U.S. 376, 58 S.Ct. 623, 82 L. Ed. 907 (1938).

5. Brief for Appellant, p. 11.

6. Squire v. Capoeman, 351 U.S. 1, at page 9, 76 S.Ct. 611, at page 616, quoting from Board of Commissioners of Creek County v. Seber, 318 U.S. 705, 715, 63 S.Ct. 920, 37 L.Ed. 1094.