**Thelma Horton CLARK,**
**Plaintiff-Appellee,**

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

**No. 76–2089.**

United States Court of Appeals,
Tenth Circuit.

Argued May 9, 1978.
Decided Nov. 27, 1978.

Bert Barefoot, Jr. and Joseph A. Claro of Barefoot, Moler & Claro, Oklahoma City, Okl., for plaintiff-appellee.

William S. Estabrook III, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews and Grant W. Wiprud, Attys., Tax Div., Dept. of Justice, Washington, D. C., with him on brief), for defendant-appellant.

Before SETH, Chief Judge, and HOLLO-WAY, McWILLIAMS, BARRETT, DOYLE, McKAY and LOGAN, Circuit Judges, (en banc).

LOGAN, Circuit Judge.

This case was brought by the plaintiff-appellee Thelma Horton Clark (Clark) to obtain a refund and interest on allegedly improperly paid federal income taxes. The United States appeals from summary judgment granted in favor of Clark.

Clark, a Chickasaw Indian, was under noncompetent restricted status from her birth on April 9, 1904, until October 3, 1975. The Chickasaws are one of the Five Civi-lized Tribes. Under Homestead Allotment Patent No. 21630, Clark was allotted 160 acres of Chickasaw National Indian Territory. The land was designated as tax exempt until April 26, 1956, provided title remained in her, which exempt status was later extended for her life. Act of Aug. 11, 1955, Pub.L.No. 348, § 1, 69 Stat. 666.

In 1947, during the period of Clark's restricted status, an oil and gas lease agreement was made with respect to a portion of her homestead with Republic National Gas Company and Grisso Royalty Corporation. The Bureau of Indian Affairs (BIA), a division of the Department of Interior, approved the lease in its capacity as trustee of Clark's allotted land and her income. It was also her personal guardian. Under the terms of the lease she received $186,100 total cash bonus and $150 delay rental during the year 1947. A total of $61,688.58 was paid in federal income taxes by the BIA with respect to these payments.

Clark filed what the parties agree is a timely request for refund for taxes paid out of her trust account.[1] The Internal Revenue Service (IRS) disallowed the refund, refusing to follow our decision in *United States v. Daney*, 370 F.2d 791 (10th Cir. 1966). This suit followed.

The only question in the case is stipulated by the parties:

Are the oil and gas cash bonus and delay rentals paid a noncompetent, restricted member of the Five Civilized Tribes on restricted, allotted Indian land subject to federal income tax as advance royalty where oil production followed the payment of said cash bonus and delay rentals.

This requires us to consider whether *Daney* is distinguishable or erroneous. The IRS asks us to overrule that prior decision of our Court.

1. While the claim for refund was filed many years after the tax was paid, the IRS concedes that the tax statute of limitations does not apply to tax-exempt income from allotted and restricted Indian lands. Rev.Rul. 61–11, 1961–1 C.B. 724. The statute begins to run when the noncompetency status is lifted. *Daney v. United States*, 247 F.Supp. 533, 535 (D.Kan.1965), aff'd, 370 F.2d 791 (1966). *See also, Dodge v. United States*, 362 F.2d 810 (Ct.Cl.1966).

The general rule of tax law is that cash bonus and delay rental payments made at the time of leasing a tract for oil and gas are taxed as ordinary income. *Burnet v. Harmel*, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199 (1932) ("We cannot say that such payments by the lessee to the lessor, to be retained by him regardless of the production of any oil or gas, are any more to be taxed as capital gains than royalties which are measured by actual production." *Id.* at 112, 53 S.Ct. at 77). The cash bonus qualifies for percentage depletion. *Herring v. Commissioner*, 293 U.S. 322, 55 S.Ct. 89, 79 L.Ed. 646 (1934); Treas.Reg. § 1.612–3(d) (1960). When cost depletion is used the IRS distinguishes between situations where there is later commercial production and where there is not. *See* Treas.Reg. § 1.612–3(a) (1960). The IRS urges that these same rules should apply in the instant case.

This Court directly addressed that argument in *United States v. Daney*, 370 F.2d 791, 795 (10th Cir. 1966) as follows:

This misses the mark. We are not dealing with an ordinary citizen. We are dealing with a non-competent, restricted Choctaw Indian who, in 1958, was living on his allotted, restricted land. This Indian's lease bonus is taxable if and only if the Act of 1928 says it is. It is true that section three did and does subject to all State and Federal taxes any true production royalty which an Indian received from production on his restricted land. But it goes no further than that. It does not say that, under the "ordinary" rules of taxation, a lease bonus is to be treated as an advance royalty. The clear language and the history of the statute limit its application to royalties received on production. The government also says that: "Having made the initial decision to tax all minerals including oil and gas on the allotted lands, it is not fairly to be assumed that Congress thereafter intended one set of tax rules for the Indians and another, at variance with the latter, for ordinary citizens." We do not agree. Congress did accord to the Indians a different set of rules of taxation. The language of the statute purports to put Indi-

ans and other citizens of Oklahoma on equal footing only as regards minerals *produced.* The Indians still enjoy the special tax advantage as to other income from the allotted, restricted lands. That advantage must be preserved to carry out the Congressional purpose behind the allotment system which "was to protect the Indians' interest and 'to prepare the Indians to take their place as independent, qualified members of the modern body politic.'" It may be said that there no longer exists any need to give the restricted Indian a tax advantage, that he has become an independent, qualified member of the modern body politic, and, indeed, that all the "ordinary" tax principles should be applicable to him. It is for Congress to make that determination and change the Act of May 10, 1928. This court cannot. (Footnotes omitted.)

Nothing has been presented to us in the instant case which persuades us that *Daney* was wrong, and we hereby reaffirm that decision.

We start from the proposition that native American Indians have consistently received different tax treatment than other American citizens, especially when restricted lands are concerned. Members of the Five Civilized Tribes were given tax exempt status as to the lands involved here. Act of June 28, 1898, c. 517, § 29, 30 Stat. 495; Act of Apr. 26, 1906, c. 1876, § 19, 34 Stat. 137. These payments may be taxed only if the law has been changed and they are clearly and unambiguously included in a taxation scheme; ambiguities should be resolved in their favor.

The Government urges us to view this case as an ordinary tax case without regard to the treaty, relevant statutes, congressional policy concerning Indians, or the guardian-ward relationship between the United States and these particular [Quinaielt] Indians. . . .

We agree with the Government that Indians are citizens and that in ordinary affairs of life, not governed by treaties or remedial legislation, they are subject to the payment of income taxes as are other

citizens. We also agree that, to be valid, exemptions to tax laws should be clearly expressed. But we cannot agree that taxability of respondents in these circumstances is unaffected by the treaty, the trust patent or the Allotment Act.

*Squire v. Capoeman*, 351 U.S. 1, 5–6, 76 S.Ct. 611, 614, 615, 100 L.Ed. 883 (1956). *See also, Board of County Comm'r v. Seber*, 318 U.S. 705, 713, 63 S.Ct. 920, 87 L.Ed. 1094 (1943) (stating that tax exemption should not be terminated absent express Congressional direction); *Choate v. Trapp*, 224 U.S. 665, 675, 32 S.Ct. 565, 56 L.Ed. 941 (1912) (doubtful construction as to interpretations of tax exemptions should be construed in favor of the Indians); *Chouteau v. Commissioner*, 38 F.2d 976, 977–78 (10th Cir. 1930), *aff'd*, 283 U.S. 691, 50 S.Ct. 410, 74 L.Ed. 1135 (1931) (stating that Indians have always been the subject of special tax legislation and general acts of Congress are not applicable to them unless expressly made so).

The key question is whether it can be said the Act of May 10, 1928, c. 517, § 3, 45 Stat. 495, clearly removes the exemption from taxation when applied to cash bonus and delay rental payments made for entering into an oil and gas lease. The words of that Section 3 are as follows:

> That all minerals, including oil and gas, *produced* on or after April 26, 1931, from restricted allotted lands of members of the Five Civilized Tribes in Oklahoma, or from inherited restricted lands of full-blood Indian heirs or devisees of such lands, shall be subject to all State and Federal taxes of every kind and character the same as those *produced* from lands owned by other citizens of the State of Oklahoma; and the Secretary of the Interior is hereby authorized and directed to cause to be paid, from individual Indian funds held under his supervision and control and belonging to the Indian owners of the lands, the tax or taxes so assessed against the royalty interest of the respective Indian owners in such oil, gas, and other mineral *production*. (Emphasis supplied.)

The legislative history indicates Congress' concern was with the Oklahoma Gross Production Tax. Nothing was cited to us and we could find nothing in that legislative history discussing federal taxes.

It is possible to declare that cash bonus and delay rentals are "advanced royalties," as some of the tax cases have tabbed them, and read the intent of the Act to reach the conclusion the IRS urges. But it is at least equally logical to focus upon the reference to the taxes being upon production, and Congress' concern with state production taxes, to reach the opposite view. There are distinctions recognized to this day as to tax treatment under certain circumstances of bonus payments, delay rentals and royalties on continuing production. *See* Treas. Reg. § 1.612–3 (1960). Certainly in 1928 before *Burnet v. Harmel*, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199 (1932), and *Murphy Oil Co. v. Burnet*, 287 U.S. 299, 53 S.Ct. 1611, 77 L.Ed. 318 (1932), it was not settled that bonuses were going to be taxed to non-Indians in the same manner as royalties. In the end it comes down to the fact we are not convinced that Congress clearly intended to remove this tax exemption, in view of the strong public policy to favor the Indians in matters of construction of these Acts. In the words of *Choate v. Trapp*, 224 U.S. 665, 675, 32 S.Ct. 565, 569, 56 L.Ed. 941 (1912):

> The construction, instead of being strict, is liberal; doubtful expressions, instead of being resolved in favor of the United States, are to be resolved in favor of a weak and defenseless people, who are wards of the nation, and dependent wholly upon its protection and good faith. This rule of construction has been recognized, without exception, for more than a hundred years, and has been applied in tax cases. . . .

The fact that production was later obtained from this lease, and that might not have been the case in *Daney* (the matter was not there discussed) is a distinction without a difference in our view.

We mention briefly one other point. Arguably the government committed a serious

breach of its fiduciary duty to Mrs. Clark when it did not seek a refund of these taxes shortly after our *Daney* decision. *Cf. United States v. Mason*, 412 U.S. 391, 93 S.Ct. 2202, 37 L.Ed.2d 22 (1973). We do not discuss that issue because we have held the United States has not waived its immunity from suit for such breach. *Harkins v. United States*, 375 F.2d 239 (10th Cir. 1967).

We affirm the lower court order granting the recovery of $61,688.58 in wrongfully paid income taxes for the year 1947, plus statutory interest.

Paul A. Baca, Denver, Colo., for plaintiff-appellant.

Samuel Berman and Harry R. Sayre of Adams & Sayre, Denver, Colo., for defendants-appellees.

Before McWILLIAMS, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.