T.C. Memo. 1997-502


UNITED STATES TAX COURT


JOSEPH BALDWIN CAMPBELL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9244-95.                    Filed November 6, 1997.


<u>Lawrence H. Crosby</u>, for petitioner.

<u>Jonathan P. Decatorsmith</u>, for respondent.


MEMORANDUM OPINION


COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7443A(b)(3)[1] and Rules 180, 181, and 182.

---

[1]     Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the year at issue.  All Rule
references are to the Tax Court Rules of Practice and Procedure.
At the time the petition was filed, petitioner elected to have
his case considered as a small tax case under sec. 7463.  Prior
to commencement of trial, petitioner moved to have the case
considered as a regular case under sec. 7443A(b)(3).  The Court
(continued...)

Respondent determined a deficiency of $8,512 in petitioner's Federal income tax for 1992 and additions to tax of $1,915, $681, and $374 under sections 6651(a)(1) and (2) and 6654(a), respectively.

Following concessions by the parties, as discussed below, the issues remaining for decision are:  (1) Whether per capita distributions to petitioner from the Prairie Island Tribal Council arising out of the ownership and operation of a gambling casino constitute gross income, or whether such income is "derived directly" from land owned by the Prairie Island Tribal Council and is excludable from taxation pursuant to laws, treaties, or agreements between Indian tribes and the United States Government, and (2) whether unreimbursed expenses incurred by petitioner in the course of his duties as a member of the Environmental Protection Committee of the Prairie Island Tribal Council are deductible in 1992.

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference.  At the time the petition was filed, petitioner's legal residence was Welch, Minnesota.

During all years relevant hereto, petitioner was an enrolled member of the Prairie Island Indian Community in Minnesota and

[1](...continued)
granted petitioner's motion, at which time respondent filed an answer.

resided on such tribe's reservation.  In 1982, petitioner entered into a lease with the Prairie Island Tribal Council (tribal council) wherein petitioner leased from the tribal council 270 acres of the tribe's reservation for purposes of farming.  The lease was for a term of 25 years.  Over the entire tract of leased land, petitioner raised corn, soybeans, wheat, winter wheat, buckwheat, and seed corn.  Petitioner installed various irrigation equipment over portions of the property.

In 1983, the tribal council began carrying out plans to build a bingo hall and a casino on a portion of petitioner's leased land.  Pursuant thereto, the tribal council requested that petitioner cease his farming operations on a specified 10-acre portion of the land leased to petitioner; the tribal council intended to use that 10 acres for the building and operation of the bingo hall and casino.  Petitioner agreed to relinquish the 10 acres to the tribal council.

In connection with the further development of casino operations on petitioner's leased land, the tribal council, in 1984, terminated petitioner's lease on the 270 acres of farmland. Petitioner, however, continued to farm the land each year.  In 1987, the tribal council entered into a second lease with petitioner for the same 270 acres, less 10 acres "more or less, presently occupied by a bingo hall and parking lot."  The term of this lease was 10 years, which expired on December 31, 1996.

In December 1991, the tribal council informed petitioner in writing that the entire tract of land leased to him would be required for "community economic development" (i.e., expansion of the casino buildings and operations), and that petitioner should cease all farming operations thereon. The correspondence further stated that the provisions of petitioner's second lease would terminate upon petitioner's receipt of such correspondence. Subsequently, petitioner ceased all farming operations on the leased land. Under the terms of the lease, the tribal council reserved the right to terminate the lease as to all or part of the leased property for "economic development" by advising the lessee in writing on or before January 1 of the year in which the premises were required for economic development. In such event, the lessee was not entitled to compensation for termination of the lease. The lease provided otherwise where the termination notice was given after January 1 of the year for which economic development was contemplated. Nevertheless, a dispute arose between petitioner and the tribal council regarding the tribal council's right to terminate the lease and the tribal council's responsibility to reimburse petitioner for damages incurred by petitioner as a result of such termination. At the time of the trial of this case, petitioner's continuing dispute with the tribal council over this issue was scheduled for legal arbitration proceedings.

During the years of operation of the casino, each enrolled member of the Prairie Island Indian Community who lived on the reservation received per capita distributions of a portion of the casino's earnings for that year.[2] In other words, a portion of the casino's earnings each year was divided equally among, and distributed to, each man, woman, and child who was an enrolled member of the Prairie Island Indian Community who lived on the tribe's reservation.[3] During the year in question, 1992, petitioner's per capita distribution from the casino operations was $43,380.[4] Each enrolled member of the Prairie Island Indian Community who lived on the reservation received a $43,380 distribution from the casino operations in 1992. The payment of the $43,380 per capita distribution to petitioner was reported to respondent by the tribal council on Form 1099-DIV.

---

[2] The Court surmises from the record that, originally, these distributions were paid on a quarterly basis, but eventually the payments were made on monthly basis.

[3] Through 1994, each member of the tribe who lived on the reservation, including children of all ages, received an equal distribution of the earnings. For 1995 and subsequent years, the apportionment was altered so that the children (those under the age of 18) received only 15 percent of the amount of the distributions received by the adults.

[4] Petitioner testified that he received the following per capita distributions from casino operations for years prior and subsequent to the year at issue: (1) for 1990--$200, (2) for 1991--$19,000, (3) for 1993--$45,000, (4) for 1994--between $70,000 and $80,000, and (5) for 1996--between $90,000 and $100,000. Petitioner did not file a Federal income tax return for any of these years.

Petitioner did not timely file his Federal income tax return for the year at issue. He filed his return for 1992 after the notice of deficiency was issued. In the notice of deficiency, respondent determined that petitioner had unreported income of $43,380 and unreported nonemployee compensation income of $1,951, both from the tribal council. Respondent further determined that petitioner had unreported interest income of $98 from Norwest Bank, and that he was liable for self-employment taxes of $275.[5] Respondent allowed petitioner a self-employment tax deduction of $138, a standard deduction of $3,600, and one personal exemption of $2,300. Respondent also determined that petitioner was liable for additions to tax under section 6651(a)(1) for failure to timely file a Federal income tax return, section 6651(a)(2) for failure to timely pay the amount shown as tax on the return, and section 6654(a) for failure to make estimated tax payments, in the amounts of $1,915, $681, and $374, respectively.

In a Stipulation of Settled Issues filed with the Court at trial, petitioner conceded that the nonemployee compensation of $1,951 from the tribal council and the interest income of $98 from Norwest Bank were includable in gross income for 1992. Further, petitioner conceded that he was liable for self-

---

[5] All the unreported income adjustments were based on information reported to respondent by third party payers.

employment taxes of $275, and that he was liable for the additions to tax under sections 6651(a)(1) and 6654(a).

Respondent conceded that petitioner was entitled to a self-employment tax deduction of $138, a standard deduction of $3,600, and one personal exemption of $2,300. Respondent further conceded that the addition to tax under section 6651(a)(2) was not properly applicable in this case, and that it was mistakenly included in the notice of deficiency.

The determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden is on the taxpayer to prove that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

The first issue is whether the per capita distribution of $43,380 from the tribal council is includable in petitioner's gross income for 1992. Petitioner contends that this distribution was in lieu of the income he would have earned from the land and, therefore, was excludable from gross income.

Section 61 provides that gross income includes "all income from whatever source derived," unless otherwise provided. The Supreme Court has consistently given this definition of gross income a liberal construction "in recognition of the intention of Congress to tax all gains except those specifically exempted." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955); see also Roemer v. Commissioner, 716 F.2d 693, 696 (9th Cir. 1983),

revg. 79 T.C. 398 (1982) ([all] realized accessions to wealth are presumed to be taxable income, unless the taxpayer can demonstrate that an acquisition is specifically exempted from taxation.").

It is well established that American Indians are subject to Federal income taxation unless an exemption exists in the language of a treaty or an Act of Congress.  Squire v. Capoeman, 351 U.S. 1, 6 (1956); United States v. Willie, 941 F.2d 1384, 1400 (10th Cir. 1991); Cross v. Commissioner, 83 T.C. 561, 564 (1984), affd. sub nom. Dillon v. United States, 792 F.2d 849 (9th Cir. 1986).  The fact that petitioner is an American Indian does not preclude him from being liable for the payment of income tax. Hoptowit v. Commissioner, 78 T.C. 137, 145 (1982), affd. 709 F.2d 564 (9th Cir. 1983).

Though not specifically addressed in the Internal Revenue Code, revenue from casino gambling conducted on American Indian reservations is specifically subjected to Federal taxes under the Indian Gaming Regulatory Act, Pub. L. 100-497, 102 Stat. 2467, 2472, 25 U.S.C. sec. 2710 (1994).  The Indian Gaming Regulatory Act provides that "per capita payments [of net revenues from gaming activities conducted or licensed by any Indian tribe] are subject to Federal taxation and tribes [must] notify members of such tax liability when payments are made."  25 U.S.C. sec. 2710(b)(3)(D) (1994).  The tribal council did notify petitioner,

as well as the other tribal members, of the taxability of their per capita distributions.  The tribal council also notified respondent, on Forms 1099-DIV, of its payment of each per capita distribution.

To prevail on this issue, petitioner must point to express exemptive language in some statute or treaty that excludes the $43,380 distribution from his gross income.  Rickard v. Commissioner, 88 T.C. 188, 192 (1987); Cross v. Commissioner, supra at 564; see Welch v. Helvering, 290 U.S. 111 (1933). Petitioner claims that the Indian General Allotment Act of 1887 (Indian General Allotment Act), ch. 119, 24 Stat. 388, 25 U.S.C. sec. 331-358 (1988) provides such an express exception to Federal income taxation.[6]

The Indian General Allotment Act provided for the allotment of reservation lands to American Indians to be held in trust for allottees by the United States for a period of 25 years, or longer, during which time the allotted land cannot be alienated or encumbered.  Upon expiration of the time limitation, if the

---

[6]    Petitioner alleges, and the Court surmises from the record, that the leased land in this case is governed by the Indian General Allotment Act rather than by a Federal statute specifically addressing the tribal lands of the Prairie Island Indian Community.  Nevertheless, it has been held that the test of entitlement to a Federal income taxation exemption would be the same under the Indian General Allotment Act of 1887, ch. 119, 24 Stat. 388, 25 U.S.C. sec. 331-358 (1988), and a Federal statute specifically addressing the tribal lands of the Eastern Cherokee Indians.  See Saunooke v. United States, 806 F.2d 1053, 1055 (Fed. Cir. 1986).

allottee is determined to be competent to manage his or her own affairs, a fee patent can be issued to the allottee with respect to the allotted land.  The Indian General Allotment Act serves to preserve the value of the land in trust until such time as the Secretary of the Interior determines that the allottee is competent to hold title to the land in fee simple.  County of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation, 502 U.S. 251 (1992).

In Squire v. Capoeman, supra, the Supreme Court concluded that a Federal income tax exemption was created by the Indian General Allotment Act for income that an allottee derives directly from the land held in trust for him.  In that case, the Supreme Court reasoned that there existed a congressional intent to exempt allotted lands from all charges and encumbrances until after the fee interest was conveyed to the allottee.  It held that income received by an incompetent Indian from the sale of standing timber logged off his own allotment was exempt from Federal income tax, but "reinvestment income" was not.  Id. at 9. The Court stated:  "It is clear that the exemption accorded tribal and restricted Indian lands extends to the income derived directly therefrom."  Id. (quoting Cohen, Handbook of Federal Indian Law, 265, (1941); emphasis  added).  The stated rationale for the "derived directly" standard was that the logging of the

land caused a diminution of the land's value.  The Supreme Court
stated:

>     Once logged off, the land is of little value.  The land no
>     longer serves the purpose for which it was by treaty set
>     aside * * * and for which it was allotted to him.  * * *
>     Unless the proceeds of the timber sale are preserved for
>     * * * [the taxpayer], he cannot go forward when declared
>     competent with the necessary chance of economic survival in
>     competition with others.  * * *  [Squire v. Capoeman, supra
>     at 10; fn. ref. omitted.]

The courts have held that to allow taxation of the proceeds of
activities that diminish the value of land allotted to an Indian
runs contrary to the rationale underlying Capoeman, for it
reduces the value of that which was to be preserved.  See
Anderson v. United States, 845 F.2d 206, 207 (9th Cir.1988).  The
"derived directly" standard is settled precedent in this and all
other courts that have addressed this issue.  United States v.
Willie, supra at 1400; Saunooke v. United States, 806 F.2d 1053,
1055 (Fed. Cir. 1986); Cross v. Commissioner, supra at 565-566.

In Stevens v. Commissioner, 452 F.2d 741 (9th Cir. 1971),
affg. in part and revg. in part 54 T.C. 351 (1970), affg. in part
52 T.C. 330 (1969), the Court of Appeals for the Ninth Circuit
affirmed this Court's holding that, under the "derived directly"
standard, income from farming and ranching of land acquired by
the Government in trust for an individual Indian was exempt from
Federal income tax.  See also United States v. Daney, 370 F.2d
791 (10th Cir. 1966) (income from oil and gas leases tax-exempt);

Big Eagle v. United States, 156 Ct. Cl. 665, 300 F.2d 765 (1962) (royalties from mineral deposits tax exempt).[7]

The courts have confined the exemption to income received from activities that diminish or exploit the value of the land (such as logging, mining, or farming). Income earned through the investment of capital or labor, such as restaurants, motels, tobacco shops, and similar improvements to the land, fail to qualify for the exemption, although the activity takes place on land held in trust. See Hoptowit v. Commissioner, 78 T.C. at 145 (income received from the operation of a smokeshop on allotted land was taxable); see also Cross v. Commissioner, 83 T.C. at 566; Beck v. Commissioner, T.C. Memo. 1994-122, affd. without published opinion 64 F.3d 655 (4th Cir. 1995) (rental income derived from apartments located on Indian reservation land was not exempt); Critzer v. United States, 220 Ct. Cl. 43, 597 F.2d 708 (1979) (exemption denied for income received from the operation of a motel, a restaurant, a gift shop, and from the rental of a craft shop and apartment units). Under the rationale of these cases, the income derived from the operation of a casino would not be derived directly from the land.

---

[7]   Citing these cases, in Cross v. Commissioner, 83 T.C. 561, 566 (1984), affd. sub nom. Dillard v. United States, 792 F.2d 849 (9th Cir. 1986), this Court adopted a narrow reading of the "derived directly" exemption, observing that it had been applied only in situations where there is exploitation of the land itself.

In the instant case, the continued use of the trust land for casino operations does not decrease the economic value of the land. In this regard, there is no exploitation of the land by the Prairie Island Indian Community resulting in a diminution of the land's value. Moreover, persons gambling and enjoying food and drink in the casino are paying principally for the use of the casino facilities. Thus, the per capita distributions petitioner received were primarily derived from the utilization of a capital improvement; i.e., the casino, and not from the land itself. See Beck v. Commissioner, supra.

Petitioner agrees that, absent his possession of a lease to farm the 270 acres, the $43,380 per capita distribution would be subject to Federal income tax.[8] However, petitioner argues that the existence of his lease provides him with a special exemption from the general taxability of the income derived from the casino operations. Petitioner points out that, if he had farmed the 270 acres in 1992, all the income derived from such farming activity would have been exempt from Federal income tax under the "derived directly" standard. Petitioner argues that, because he held a lease on the land upon which the casino was located and operated,

---

[8] The courts have uniformly denied an exemption for an Indian's distributive share of income derived from unallotted tribal lands held in trust for the tribe as a whole. E.g., Anderson v. United States, 845 F.2d 206 (9th Cir. 1988); Holt v. Commissioner, 364 F.2d 38 (8th Cir. 1966), affg. 44 T.C. 686 (1965).

the $43,380 per capita distribution he received was in lieu of the farming income he relinquished in order to allow the building and operation of the casino.  Therefore, petitioner contends, the $43,380 paid to him should be exempt from Federal income tax as "substitute farming income".

The Court does not disagree that, if petitioner had continued to farm the leased land, the income derived from his farming operations would have been "derived directly" from the land and, thus, would have been exempt from Federal income taxes. See Stevens v. Commissioner, supra.  However, this Court is unwilling to extend such an exemption to encompass a type of income that clearly falls outside the bounds of the "derived directly" standard, and that was clearly intended to be subjected to Federal income tax under the Indian Gaming Regulatory Act. The $43,380 per capita distribution to petitioner in 1992 was not paid in lieu of his potential farming income for that year but, rather, was paid to petitioner as a result of his status as an enrolled member of Prairie Island Indian Community and a resident on the tribal reservation.  That petitioner may have held a lease to farm the 270 acres in 1992 had no bearing on whether or not he received the per capita distribution in that year, and did not operate to change the character of the per capita distribution he received.  Each and every enrolled member of Prairie Island Indian Community who lived on the reservation received an equal

distribution in 1992; petitioner received that distribution regardless of whether he held a lease on the 270 acres.[9] Petitioner's argument is wholly without merit.

The Court recognizes the possibility that petitioner may have incurred some pecuniary damages as a result of his inability to farm the leased land during the year at issue. Moreover, the Court understands that petitioner may harbor feelings of inequitable treatment surrounding his relinquishment of what he regarded as tax-free farming income and the subsequent receipt by him of a taxable per capita distribution from the casino operations. Although the Court may sympathize with petitioner's quandary, this Court is a court of limited jurisdiction and lacks general equitable powers. Commissioner v. McCoy, 484 U.S. 3, 7 (1987); Hays Corp. v. Commissioner, 40 T.C. 436 (1963), affd. 331 F.2d 422 (7th Cir. 1964); see sec. 7442. The Court has no authority to disregard the express provisions of statutes adopted by Congress, even where the result in a particular case may seem harsh. See, e.g., Estate of Cowser v. Commissioner, 736 F.2d

---

[9] It is notable that petitioner did not produce any evidence to show that his lease was still valid in 1992 (i.e., had not been validly terminated by the tribal council in 1991). This may be one of the issues to be resolved in the arbitration of petitioner's dispute with the tribal council. The validity of the lease is made moot by this Court's determination that the existence of the lease has no bearing on the taxability of the subject per capita distribution. Nevertheless, petitioner failed to prove on this record that the lease was valid during the year at issue. On this record, it appears that the tribal council terminated the lease pursuant to the terms of the lease.

1168, 1171-1174 (7th Cir. 1984), affg. 80 T.C. 783, 787-788 (1983). Petitioner's seemingly unfortunate circumstance does not affect his Federal income tax liability with regard to the $43,380 per capita distribution. Petitioner's recourse, if any, lies in his dispute with the tribal council, which has been scheduled for legal arbitration.

On this record, the Court holds that the $43,380 per capita distribution received by petitioner in 1992 was not received in lieu of farming income. The Court holds further that such distribution is subject to Federal income tax under the provisions of the Indian Gaming Regulatory Act and that such income was not "derived directly" from the trust land. Respondent, therefore, is sustained on this issue.

The second issue is whether unreimbursed expenses incurred by petitioner in the course of his duties as a member of the Environmental Protection Committee (EPC) of the tribal council are deductible in 1992. Expenses incurred by an employee that are not reimbursed by the employer are generally deductible under section 162(a), which allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.[10] Primuth v. Commissioner, 54

---

[10] For tax years beginning on or after Jan. 1, 1987, as in this case, miscellaneous itemized deductions, including unreimbursed employee expenses, are deductible, under sec. 67(a), only to the extent that the aggregate miscellaneous itemized deductions

(continued...)

T.C. 374, 377 (1970). To qualify for the deduction, an expense must be both "ordinary" and "necessary" within the meaning of section 162(a). Deputy v. duPont, 308 U.S. 488, 495 (1940). Whether the amount disallowed by respondent constitutes an ordinary and necessary expense incurred in the operation of the taxpayer's trade or business as an employee is a question of fact to be determined from the evidence presented, with the burden being on the taxpayer to overcome the presumed correctness of respondent's determination. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Allen v. Commissioner, T.C. Memo. 1988-166.

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deductions claimed. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Furthermore, a taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions. Sec. 6001. Under certain circumstances, where a taxpayer establishes entitlement to a deduction, but does not establish the amount of the deduction, the Court is permitted to estimate the amount allowable. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). However, there must be sufficient evidence in the record to permit the Court to conclude that a deductible expense was incurred in at least the amount allowed. Williams v.

---

[10](...continued)
exceed 2 percent of the taxpayer's adjusted gross income. Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085.

United States, 245 F.2d 559, 560 (5th Cir. 1957). In estimating the amount allowable, the Court bears heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, supra at 544.

The deduction for travel expenses away from home, including meals and lodging, under section 162(a)(2), is conditioned on such expenses being substantiated by "adequate records" or by sufficient evidence corroborating the claimed expenses pursuant to section 274(d). Sec. 1.274-5(a)(1), Income Tax Regs. To meet the adequate records requirements of section 274(d), a taxpayer "shall maintain an account book, diary, statement of expense or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure". Sec. 1.274-5(c)(2)(i), Income Tax Regs. (emphasis added). The elements to be proven with respect to each traveling expense are the amount, time, place, and business purpose of the travel. Sec. 1.274-5(b)(2), Income Tax Regs. The substantiation requirements of section 274(d) are designed to encourage taxpayers to maintain records, together with documentary evidence substantiating each element of the expense sought to be deducted. Sec. 1.274-5(c)(1), Income Tax Regs.

Respondent argued that petitioner's position with the EPC was purely a volunteer position and, therefore, was not in

connection with a profit-motivated trade or business.[11]  Further, respondent argued, petitioner's participation as a member of the EPC was not regular, continuous, and with the primary purpose of making a profit as required by section 162.  Finally, respondent argued, petitioner failed to substantiate the amount of his travel expenses incurred away from home, as required by section 274(d).

The expenses petitioner claimed were travel expenses incurred with respect to trips taken by petitioner in connection with his duties as spokesperson for the EPC.  Petitioner introduced into evidence a computer-generated printout, which he had prepared in anticipation of trial, of the amounts and descriptions of his claimed expenses.  However, petitioner failed to produce any receipts or other similar corroborative evidence to substantiate the various amounts, times, places, or business purposes of his claimed expenses.  In short, petitioner failed to introduce any documentary evidence sufficient to support his claimed expenses incurred in connection with his duties as a member of the EPC.

The Court finds that petitioner's records are insufficient to satisfy the stringent substantiation requirements of section 274(d).  In the case of travel expenses, specifically including

---

[11]  Petitioner admitted at trial that his position with the EPC was a volunteer position.

meals and lodging while away from home, as well as in the case of entertainment, section 274(d) overrides the so-called <u>Cohan</u> doctrine discussed earlier in this opinion. <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed Reg. 46014 (Nov. 6, 1985). The Court is unable to use its discretion in allowing any of the travel expenses claimed by petitioner. Since petitioner did not substantiate his expenses under section 274(d), respondent is sustained on this issue. The Court finds it unnecessary to consider the other arguments raised by respondent on this issue.

<u>Decision will be entered</u>

<u>for respondent.</u>